IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MOBILE TELECOMMUNICATIONS TECHNOLOGIES, LLC, REED & SCARDINO LLP 301 CONGRESS AVENUE, SUITE 1250 AUSTIN, TX 78701<br><br>Plaintiff,<br>v.<br>LEAP WIRELESS INTERNATIONAL, INC. and CRICKET COMMUNICATIONS, INC.,<br><br>FOLEY & LARDNER LLP 3579 VALLEY CENTRE DRIVE, SUITE 300 SAN DIEGO, CA 92130-3302<br>Defendant. | §§§§§§§§§§§§§§§§§§§ |

**MEMORANDUM IN SUPPORT OF NONPARTY OUTSIDE FORMER LEGAL COUNSEL FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, LLP AND JOHN ROMARY'S MOTION TO QUASH AND/OR FOR A PROTECTIVE ORDER**

## TABLE OF CONTENTS

I. STATEMENT OF FACTS ................................................................................................2

II. ARGUMENT....................................................................................................................3

    A. As a Last Minute "Fishing Expedition," Leap is Unjustifiably and Without Support Suggesting that Reputable Finnegan Attorneys Engaged in Inequitable Conduct Based on Events in Lengthy Patents and Prosecution File Histories From Nearly 20 Years Ago. ....................................4

    B. Leap Improperly Poses Questions That Are Objectionable In View Of The Attorney-Client Privilege................................................................................5

    C. With One Facially Frivolous Exception, Leap's Pleading Simply Fails to Include Particularized Factual Allegations Against Finnegan ............................7

    D. Leap's Decision to Notice Depositions of Long Known Prosecution Counsel at the Eleventh Hour Demonstrates Lack of Need and Undue Burden...................................................................................................................9

    E. MTel Plans To File Its Own Motion To Quash Explaining How Leap Cannot Make a Case for Inequitable Conduct At All, Let Alone Against The Attorneys...................................................................................................11

III. CONCLUSION................................................................................................................12

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Exergen Corp. v. Wal-Mart Stores, Inc.*,
  575 F.3d 1312 (Fed. Cir. 2009)..................................................................................4, 7, 8, 9

*Flatow v. Islamic Republic of Iran*,
  201 F.R.D. 5 (D.D.C. 2001)..................................................................................................10

*In re Spalding Sports Worldwide, Inc.*,
  203 F.3d 800 (Fed. Cir. 2000)............................................................................................6, 7

*Kimberly–Clark Corp. v. Johnson & Johnson*,
  745 F.2d 1437 (Fed.Cir.1984).................................................................................................4

*North Carolina Right to Life, Inc. v. Leake*,
  231 F.R.D. 49 (D.D.C. 2005)................................................................................................10

*ResQNet.com, Inc. v. Lansa, Inc.*,
  No. 01–cv–3578, 2004 WL 1627170 (S.D.N.Y. July 21, 2004) .............................................8

*Therasense, Inc. v. Becton, Dickinson & Co.*,
  649 F.3d 1276 (Fed. Cir. 2011).......................................................................4, 5, 8, 9, 10, 11

*Upjohn Co v. United States*,
  449 U.S. 383 (1981)................................................................................................................6

*Wyoming v. U.S. Dept. of Agriculture*
  208 F.R.D. 449 (D.D.C. 2002)..............................................................................................10

**Rules**

Federal Rule of Civil Procedure 9 .................................................................................................4

Federal Rule of Civil Procedure 30 ..........................................................................................1, 11

Federal Rule of Civil Procedure 45 ....................................................................................1, 3, 5, 10

On March 11, 2015[1], Leap Wireless International, Inc. and Cricket Communications, Inc. (collectively, "Leap"), defendants in the above-captioned patent infringement action pending in the United States District Court for the Eastern District of Texas, issued deposition subpoenas naming Non-Parties Finnegan, Henderson, Farabow, Garrett & Dunner LLP ("Finnegan") and former Finnegan attorneys Howard Kwon and John Romary[2] (collectively "Finnegan"). The subpoenas[3] include both a subpoena duces tecum and Rule 30(b)(6) subpoena to Finnegan and a subpoena ad testificandum to Mr. Romary, who both hereby move pursuant to Federal Rules of Civil Procedure Rule 45(d)(3)(A) to quash and/or for a protective order. The subpoenas should be quashed on the grounds that Finnegan is former outside legal counsel, and the subpoenas are directed to events that occurred in the 1990s, go to obviously privileged information, are not justified by Leap's pleadings, are unreasonably burdensome and harassing, and would require preparation for testimony about events so long ago without any justification whatsoever. In fact, Mr. Romary has been retired from Finnegan for 2 years now.

On Monday, April 6, 2015, James Hammond, the undersigned attorney for Finnegan, notified Justin Gary, the attorney for Leap who issued the subpoenas, of Finnegan's continued position that the subpoenas are objectionable, should be promptly withdrawn, or in the alternative quashed. (Exhibit 4). An agreement could not be reached on this issue.

Finnegan and John Romary ("collectively Finnegan") file this motion to quash and/or for a protective order pursuant to Rule 45(d)(3)(A), FRCivP, in this Court as the Court where compliance is demanded by appearance at depositions, but also consent to this motion being

---

[1] The parties later agreed to extend the deadline for serving Rule 45 written responses and objections to Leap's subpoenas to April 6, 2015. A copy of Finnegan's responses and objections are attached hereto at Exhibit 5.

[2] John Romary has agreed to be represented by Finnegan. Howard Kwon, a former Finnegan associate who left Finnegan over 15 years ago in 2000, is being represented by Texas trial counsel Reed & Scardino, who represent MTel in the Texas action and are moving to quash the Howard Kwon subpoena in a separate motion, a motion in which Finnegan joins. However, the arguments made herein with respect to Finnegan attorneys apply to Mr. Kwon as well.

[3] The subpoenas to Mr. Romary and Finnegan are attached hereto as Exhibit 1.

transferred to the Eastern District of Texas where the underlying litigation is pending. Transfer is appropriate because the Texas Court is more familiar with these complex patent litigations and the issues therein including the absence of particularized pleadings of any allegations of inequitable conduct by any attorneys and given that fact discovery ends on April 13, 2015. Finnegan understands that Mobile Telecommunications Technologies, LLC ("MTel") intends to file its own motion to quash the Finnegan and non-party former Finnegan attorney, Howard Kwon, deposition subpoenas, and Finnegan joins MTel in asking for such relief.

## I.  STATEMENT OF FACTS

Upon information and belief, Finnegan attorneys, including Mr. Romary, assisted with the prosecution of a number of patents in the 1990s before the United States Patent and Trademark Office ("USPTO"). Since that time, as one might expect, a number of attorneys working on these matters have either retired, as in the case of John Romary, or sought employment elsewhere, as in the case of Howard Kwon, another subpoena recipient.

Although significant time has passed, Finnegan currently believes it transferred its patent prosecution files for the patents in suit to WorldCom, Inc. in 2001 and so far has only a small handful of stray documents, all of which are either privileged and/or nonresponsive to the subpoena duces tecum. Finnegan is not trial counsel in the Texas or any other action involving these patents. However, from public documents, it appears MTel filed its Complaint in the underlying Eastern District of Texas case from which these subpoenas issued over a year and a half ago on October 30, 2013, yet Leap waited until March 11, 2015 (barely one month before fact discovery ended) to attempt to subpoena Finnegan. The litigation involves three patents-in-suit, two of which are 49 pages long, contain dense technical material, and issued nearly twenty

years ago between 1996 and 1999[4]. Nonetheless, Leap belatedly waited until March, 2015, to subpoena reputable members of the patent bar, supposedly on the basis of alleged inequitable conduct directed against the inventors and but without particularized allegations against counsel.

On or about March 12, 2015, Finnegan and former Finnegan attorney John Romary received subpoenas from Leap to be deposed on topics allegedly related to the subject litigation filed in the District Court of the Eastern District of Texas. Leap demanded Finnegan provide a 30(b)(6) witness on April 9, 2015, for deposition and demanded that Mr. Romary appear for deposition on April 8, 2015. Leap did not ask either Finnegan or Mr. Romary in advance whether the noticed depositions were convenient, but Leap's counsel did agree in a telephone conference with Finnegan's counsel on March 19, 2015, to take the depositions off calendar while the parties discussed the matter. Leap's counsel also extended Finnegan's time to serve written objections/responses under Rule 45 until April 6, 2015.

From publicly available information, it also appears that fact discovery, including filing motions to compel, currently closes in the Texas action on April 13, 2015.

## II. ARGUMENT

Finnegan and Mr. Romary move to quash Leap's subpoenas for deposition or for a protective order on the grounds that (1) Finnegan and John Romary are former outside legal patent prosecution and Leap has not given justification for undertaking these eleventh hour depositions about events that occurred nearly 20 years ago; (2) Leap's requests on their very face are unwarranted attempts to probe into attorney-client privileged communications; (3) Leap's

---

[4]U.S. Patent No. 5,590,403 (49 pages in length) was filed November 12, 1992 and issued on December 31 1996; U.S. Patent No. 5,659,891 (15 pages length) was filed on July 7, 1995 and was issued on August 19, 1997; and U.S. Patent No. 5,915,210 (50 pages in length) was filed on July 24, 1997 and was issued on July 22, 1999.

particularized factual allegations in its operative pleading[5] are not against counsel but against the inventors only or are frivolous on their face[6]; and (4) preparing for a deposition on events that occurred so long ago would in all likelihood be futile, a waste of resources, and impose an undue burden on Finnegan attorneys. Furthermore, these depositions are unnecessary and therefore unduly burdensome in light of arguments made by MTel in its recently filed letter (Exhibit 2) supporting its notice seeking permission to file a motion for summary judgment against Leap of no inequitable conduct, which if granted—as it should be—would render these depositions utterly unnecessary and irrelevant.

> **A.   As a Last Minute "Fishing Expedition," Leap is Unjustifiably and Without Support Suggesting that Reputable Finnegan Attorneys Engaged in Inequitable Conduct Based on Events in Lengthy Patents and Prosecution File Histories From Nearly 20 Years Ago.**

Finnegan denies any argument that suggests the prosecution of the subject patents was improper. Beyond an impermissible fishing expedition at the eleventh hour, Leap cannot expect to gain anything by deposing Finnegan, especially in light of the high standards for alleging and proving inequitable conduct set out in *Therasense*.

At the time of its decision in *Therasense*, the Federal Circuit Court of Appeals held that inequitable conduct "has been overplayed, is appearing in nearly every patent suit, and is cluttering up the patent system." *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1289 (Fed. Cir. 2011) (en banc) citing *Kimberly–Clark Corp. v. Johnson & Johnson*, 745 F.2d 1437, 1454 (Fed.Cir.1984). Poignantly, the Court referred to the charge of inequitable conduct as

---

[5] Second Amended Answer, Affirmative Defenses, and Counterclaims of Leap Wireless International, Inc. and Cricket Communications, Inc. to Plaintiff's First Amended Complaint for Patent Infringement (D.I. 46) is attached hereto at Exhibit 3.

[6] Federal Rule of Civil Procedure 9(b) states "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." *See Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1327 (Fed. Cir. 2009), (holding "that in pleading inequitable conduct in patent cases, Rule 9(b) requires identification of the specific who, what, when, where, and how of the material misrepresentation or omission committed before the PTO.")

4

"an absolute plague." *Id.* Under *Therasense*, to now prove inequitable conduct, for example, "the accused infringer must prove by <u>clear and convincing evidence</u> that the applicant knew of the reference, knew that it was material, and made a deliberate decision to withhold it." *Therasense* at 1290 (emphasis added). Leap must prove, *inter alia,* by clear and convincing evidence that Finnegan "acted with a specific intent to deceive" and "that the applicant made a deliberate decision to withhold a known material reference." *Id.*

The patents subject to this litigation were filed and prosecuted between 1992 and 1999. Leap is wasting the time and resources of Finnegan, probably only in expectation that Finnegan attorneys will testify that they cannot remember.  Leap then apparently intends to use such irrelevant testimony to make misleading arguments of "inability to remember" to attempt to unfairly smear Finnegan attorneys.  This waste of judicial process is one example of the "plague" *Therasense* was intended to eradicate. Leap's subpoenas should be quashed.

      **B.    Leap Improperly Poses Questions That Are Objectionable In View Of The Attorney-Client Privilege.**

Fed. R. Civ. P. 45(d)(3)(A)(iii) requires a subpoena to be quashed that "requires disclosure of privileged or other protected matter, if no exception or waiver applies." From the deposition topics provided in the Leap's deposition notice to Finnegan, and given that John Romary is former patent prosecution counsel, it is facially apparent that Leap is asking questions about information protectable by attorney-client privilege.  Fully twelve of the sixteen deposition topics provided to Finnegan question "why" certain steps were or were not taken during patent prosecution 20 years ago. For example, nine topics question "why" documents therein referenced

5

by Leap (but not provided to Finnegan for reference[7]) were "not disclosed to the USPTO during prosecution." The remaining "why" topics include:

> 12. Why issued claim 5 of the '891 patent does not contain the term "asymmetrically."
> 13. Why Rade Petrovic was not named as a co-inventor on the '891 patent.
> 14. Why Rade Petrovic's name was removed as a named co-inventor on the '210 patent.

Finally, four of the sixteen deposition topics included in Leap's subpoena to Finnegan broadly seek information regarding Finnegan's response to or discussion of the subject subpoenas and the subject litigation, which is plainly covered by the attorney-client privilege and/or work product immunity.

Questions stemming from the topics included in the subpoena and described above can be answered, if any answer is still available after nearly 20 years, only by inquiring into the thought processes of outside legal counsel reflecting information and advice, if any, shared between attorney and client during the course of a protected confidential communication. Any such privileged communications should be protected. *See Upjohn Co v. United States,* 449 U.S. 383, 390 (1981) (stating that privilege "exists to protect not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice."); *see also In re Spalding Sports Worldwide, Inc.,* 203 F.3d 800, 806 (Fed. Cir. 2000) (recognizing that communications between an attorney and client for the purposes of preparing and prosecuting patent applications is privileged). Similarly, as former Finnegan patent counsel, it is reasonable to expect Mr. Romary would be subjected to the same line of inappropriate and prohibited questioning outlined in the deposition topics submitted to Finnegan. *See Id.* at 806 ("[Since] Spalding's invention record was prepared and submitted

---

[7] Leap is in essence accusing reputable attorneys of failing to disclose specific information to the USPTO, while simultaneously failing to define with specificity what these references even are or provide copies. For example, Finnegan has no reasonable way to even be sure what FCC document is being asserted.

primarily for the purpose of obtaining legal advice on patentability and legal services in preparing a patent application, we conclude that it is privileged in its entirety.").

Further, courts have shown a preference for limiting attorney depositions, particularly here at this late hour where Leap has shown no serious efforts to get the information it seeks by other means less intrusive of the attorney-client privilege. Although Finnegan and Mr. Romary are not trial counsel in this case and therefore are not fully aware of the issues, it is difficult to imagine that Leap expects to obtain information meaningful to its case given that it served subpoenas this near to the close of fact discovery to publicly known counsel regarding patents prosecuted nearly twenty years ago. Furthermore, to the extent there is any relevant, non-privileged and non-work product information responsive to these sixteen topics, such information should be obtained from other sources, such as from MTel itself and the inventors named in the patents-in-suit, who from Leap's Second Amended Answer, are the individuals that Leap is actually complaining about (without particularized factual assertions against the attorneys).

### C. With One Facially Frivolous Exception, Leap's Pleading Simply Fails to Include Particularized Factual Allegations Against Finnegan

Depositions of Finnegan should be quashed as improper because Leap has failed to plead particularized allegations against Finnegan, as required under the *Exergen* decision (see *supra* footnote 6). In Leap's Second Amended Answer, Affirmative Defenses, and Counterclaims, Leap alleges inequitable conduct on the grounds that documents referred to as "Petrovic1," "Petrovic2," "Petrovic3," the "'403 Patent," and "the FCC Document" were not disclosed to the Patent Office during the prosecution of the '891 patent. D.I. 46 ¶¶ 3, 28-125. Although Leap summarily claims that "one or more of the named inventors and/or their patent counsel failed to disclose prior art highly material to patentability of that patent with intent to deceive the

USPTO", Leap's attempts at particularized allegations (¶¶28-106 of Second Amended Answer) nowhere allege that former Finnegan attorneys, Howard Kwon or John Romary, had knowledge of this alleged prior art or its contents or believed it had any pertinence to any of the then-pending claims. As discussed above, *Therasense* requires that "the accused infringer must prove by <u>clear and convincing evidence</u> that the applicant knew of the reference." *Therasense* at 1290. One cannot withhold what one does not know about, and Leap has failed to plead facts that Finnegan attorneys knew about these references or any pertinent content or any supposed materiality thereof, let alone did anything with intent to deceive.

Similarly, Leap has not pled a particularized basis for inequitable conduct against Finnegan with respect to its claim that "one or more of the named inventors and/or their patent counsel failed to join Dr. Rade Petrovic as a co-inventor with intent to deceive the USPTO". For example, Leap's Second Amended Complaint has not alleged that Finnegan attorneys had actual knowledge that Dr. Petrovic should have been joined as a co-inventor. D.I. 46 ¶¶ 4, 107-26. Leap has again failed to assert inequitable conduct against Finnegan using the criteria set out in *Therasense* and *Exergen*. Where inequitable conduct has not sufficiently been pled, depositions noticed for the purpose of inequitable conduct defenses must be quashed. *ResQNet.com, Inc. v. Lansa, Inc.*, No. 01–cv–3578, 2004 WL 1627170, at *4-5 (S.D.N.Y. July 21, 2004) (quashing subpoena to depose counsel for information relating to an inequitable conduct defense because the defendant had not properly asserted inequitable conduct in its pleadings).

Leap's final allegation of inequitable conduct is that "one or more of the named inventors and/or their patent counsel made false statements to the USPTO during prosecution of the '891 Patent regarding the scope of issued claim 5." D.I. 46 ¶¶ 5, 127-50. This time Leap does allege that "patent counsel" made false statements to the USPTO (thereby making the absence of

8

allegations against patent counsel elsewhere even more glaring[8], since Leap obviously knows how to include patent counsel when it means to). Leap's arguments on this point are summed up as follows in the Answer:

> 145. **WHO**: As alleged above, the Applicants, and/or their attorneys, intentionally and purposefully represented the scope of claim 9 of the '718 Application to the USPTO. But for this conduct, claim 5 of the '891 Patent would not have issued.
>
> 146. **WHAT**: Claim 9 of the '718 Application did not include all limitations of claim 8 of the '718 Application. Specifically, the term "asymmetrically" is a limitation of claim 8 of the '718 Application but not of claim 9 of the '718 Application.
>
> 147. **WHERE**: Claim 5 of the '891 Patent does not include the "asymmetrically spaced within the mask" limitation and instead includes the limitation "spaced within the mask."
>
> 148. **WHY**: As alleged, claim 9 of the '718 Application was broader in scope than claim 8 of the '718 Application that the Examiner had already found allowable if rewritten into independent form.
>
> 149. **HOW**: But for the intentional and purposeful omission of the term "asymmetrically" from claim 9 of the '718 Application, the USPTO would not have issued claim 5 of the '891 Patent.

Yet Leap's argument is frivolous on its face since the presence or absence of the word "asymmetrically" would have been apparent from the written record for the Examiner to see and review as he saw fit. No material information is alleged to have been withheld by any Finnegan attorney.[9]

### D. Leap's Decision to Notice Depositions of Long Known Prosecution Counsel at the Eleventh Hour Demonstrates Lack of Need and Undue Burden

---

[8] In its other two asserted bases for inequitable conduct, under "WHO", it is particularly striking that no attorney is identified (see ¶¶ 102, 121). This is significant because it means Leap has no basis for any accusation there against Finnegan attorneys, as required by *Exergen*.

[9] *See Therasense* at 1291 ("[T]the materiality required to establish inequitable conduct is but-for materiality." "Hence, in assessing the materiality of a withheld reference, the court must determine whether the PTO would have allowed the claim if it had been aware of the undisclosed reference.")

9

Rule 45 requires a court to "quash or modify a subpoena that subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iv). Rule 45(d)(1) complements that requirement by commanding a party issuing a subpoena to "take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." It further requires that the issuing court "enforce this duty and impose an appropriate sanction" on parties that fail to comply. *Id.*

To determine whether a discovery request subjects a person to "undue burden," a court can look to a number of factors, including relevance of the information sought, the need for that information, the breadth of the discovery request, the time period covered by it, and the burden of having to comply. *Flatow v. Islamic Republic of Iran*, 201 F.R.D. 5, 8 (D.D.C. 2001). Non-party status of the person subject to discovery is another relevant factor in that analysis. *Wyoming v. U.S. Dept. of Agriculture*, 208 F.R.D. 449, 452 (D.D.C. 2002); *North Carolina Right to Life, Inc. v. Leake*, 231 F.R.D. 49, 52 (D.D.C. 2005) (finding that a burden imposed by a broad discovery request was excessive "particularly in light of the fact that Pew [Charitable Trusts] is neither a party, nor even an amicus, in the underlying action").

Leap waited until nearly the close of fact discovery to seek out the Finnegan depositions. In view of the weakness of the allegations against Finnegan, the reasonable conclusion is that these depositions were never a priority for Leap and are only an afterthought. The three patents which are referred to in the subpoena topics to Finnegan are not new patents, all being filed and issued in the 1990s. Given that the patents all have histories which are publicly available, any role that Finnegan attorneys played in these patents cannot come as a surprise at this last minute.

Regardless of the limited probative facts that Finnegan attorneys would likely be able to provide, Leap seeks to place an undue burden upon Finnegan attorneys to attend pointless depositions. Leap demands that Mr. Romary set aside his retirement in order to attend a frivolous

deposition and would ask additional busy Finnegan attorneys take considerable time away from other commitments for these depositions. Finnegan's obligations under Rule 30(b)(6) could require further involvement of attorneys to prepare for a deposition regarding sixteen topics (twelve of which are plainly privileged "why" topics", and the other four are work-product objectionable as well) that Leap listed in the deposition notice. In light of the rushed scheduling window and unduly burdensome nature of the depositions, compliance with the subpoenas would be an expensive endeavor that far outweighs any possible probative value to Leap.

The proper remedy for alleviating the undue burden that the depositions would impose on the Subpoenaed Nonparties and for Leap's failure to take reasonable steps to avoid that undue burden is for the Court to quash Leap's subpoenas.

### E.     MTel Plans To File Its Own Motion To Quash Explaining How Leap Cannot Make a Case for Inequitable Conduct At All, Let Alone Against The Attorneys

It is Finnegan's understanding that counsel for MTel also intends to file a motion to quash the depositions of Finnegan, John Romary and non-party former Finnegan attorney, Howard Kwon. Finnegan is not litigation counsel in any respect. MTel's current counsel, having a more thorough understanding of the case, is expected to also argue that Leap has not and cannot now through these depositions make a post-*Therasense* argument for inequitable conduct. Finnegan understands that Leap's arguments are so weak that MTel filed a notice seeking permission to file a motion for summary judgment of no inequitable conduct on March 30, 2015. Finnegan through a publicly available source located MTel's letter brief supporting this notice and has attached a copy hereto as Exhibit 2. In light of MTel's arguments, Finnegan and Mr. Romary further request these subpoenas be quashed on the grounds of being unduly burdensome given that these belated depositions are unlikely to elicit information that is either

relevant or needed in the subject litigation but instead will provide a substantial burden upon Finnegan and Mr. Romary to comply.

### III. CONCLUSION

For the reasons stated, Finnegan and John Romary ask this Court to Quash the Subpoenas directed to Finnegan and attorney John Romary, or in the alternative to issue a protective order preventing these depositions.

Dated:  April 6, 2015

Respectfully Submitted,

/s/ James Hammond

James Hammond
D.C. Bar No. 444399
Finnegan, Henderson, Farabow, Garrett & Dunner
Two Freedom Square
11955 Freedom Drive
Reston, Virginia 20190-5675
(571) 203-2730

*Attorney for Non-Parties Finnegan Henderson Farabow Garrett & Dunner and John Romary*

13

**CERTIFICATE OF SERVICE**

The undersigned certifies that on April 6, 2015, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document through the Court's CM/ECF system under Local Rule CV-5.3. Any other counsel of record will be served by a facsimile transmission and/or first class mail.

/s/ James Hammond
James Hammond